MORGAN, LEWIS & BOCKIUS LLP
Nathan J. Hochman, Bar No. 139137
nathan.hochman@morganlewis.com
The Water Garden
Suite 2050 North
1601 Cloverfield Boulevard
Santa Monica, CA  90404-4082
Tel:   +1.310.255.9025
Fax:   +1.310.907.2025
Email: nathan.hochman@morganlewis.com

Attorneys for Defendant Dmitry Fomichev

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>                    Plaintiff,<br><br>v.<br><br>Dmitry Fomichev,<br><br>                    Defendant. | Case No. 2:16-cv-2724-PSG (Ex)<br><br>**DEFENDANT DMITRY FOMICHEV'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing:       September 26, 2016<br>Time:          1:30 p.m.<br>Courtroom:   880 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

MOTION TO DISMISS 2:16-CV-2724-PSG (EX)

TO THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 26, 2016 at 1:30 p.m., or as soon thereafter as counsel may be heard, in the above-captioned matter before the Honorable Philip S. Gutierrez, United States District Court of California, located at 255 East Temple Street, Los Angeles, CA 90012, Courtroom 880, Defendant Dmitry Fomichev shall move and hereby moves to dismiss Counts 1 and 2 of the Consumer Financial Protection Bureau's ("CFPB" or "Plaintiff") Amended Complaint (Docket No. 28)  based on the unconstitutional structure of the CFPB and pursuant to Federal Rules of Civil Procedure 8, 9 and 12.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities filed herewith, all pleadings and papers on file in this action and upon such other matters as may be presented to the Court before or at the time of the hearing.

This motion is made following the conferences of counsel pursuant to Local Rule 7-3, which took place in May and on July 22, 2016 with respect to the Amended Complaint.  Mr. Fomichev understands that the CFPB intends to oppose this Motion.

Dated:        July 29, 2016

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
Nathan J. Hochman

By:  */s/ Nathan J. Hochman*
Nathan J. Hochman
Attorneys for Defendant

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA
DB3/ 201033656.3

1

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)

# <u>TABLE OF CONTENTS</u>

MEMORANDUM OR POINTS AND AUTHORITIES ......................................... 1

I.     PRELIMINARY STATEMENT ................................................................... 1

II.    FACTUAL BACKGROUND ....................................................................... 2

       A.     Dodd-Frank and the CFPB ............................................................ 2

       B.     Claims Against Mr. Fomichev ....................................................... 4

III.   THE CFPB VIOLATES THE CONSTITUTIONAL SEPARATION
       OF POWERS ............................................................................................... 6

       A.     An Agency's Power Must Be Subject to Checks and Balances ........... 6

       B.     Judicial Review of Agencies Must Be Done Holistically ................... 7

       C.     The Director Has No Presidential Oversight ................................. 8

       D.     Unlike Other Agencies, CFPB Decision-Making Power Is
              Concentrated In One Sole Director ........................................... 10

       E.     The CFPB Has No Congressional Oversight Through Its Budget ..... 11

       F.     The Court Should Not Evaluate the CFPB's Structural Features
              in Isolation .............................................................................. 12

IV.    MR. FOMICHEV DID NOT HAVE FAIR NOTICE THAT THE
       ALLEGED ACTIONS COULD BE VIOLATIONS OF THE CFPA ......... 13

V.     THE AMENDED COMPLAINT FAILS TO MEET THE PLEADING
       STANDARD ............................................................................................. 14

       A.     The CFPB Relies on Inferences and Bald Assertions Rather
              Than Alleging Specific Acts or Knowledge ................................. 15

       B.     The CFPB Failed To Allege Any Injury Attributed to Mr.
              Fomichev .................................................................................. 17

CONCLUSION......................................................................................

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

i

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................... 14

*Ass'n of Am. R.Rs. v. U.S. Dep't of Transp.*,
  721 F.3d 666 (D.C. Cir. 2013) *vacated on other grounds*, 135 S. Ct.
  1225 (2015)........................................................................... 7, 13

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1990) ........................................................ 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................. 2, 14

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ........................................................................ 9

*CFPB v. Morgan Drexen, Inc.*,
  60 F. Supp. 3d 1082, 1089 (C.D. Cal. 2014)..................................... 12

*Commodity Futures Trading Comm'n v. Schor*,
  478 U.S. 833 (1986) ..................................................................... 7

*Davis v. Chase Bank U.S.A., N.A.*,
  650 F. Supp. 2d 1073 (C.D. Cal. 2009)............................................ 14

*Durham v. Kelly*,
  810 F.2d 1500 (9th Cir. 1987)....................................................... 15

*Epstein v. Wash. Energy Co.*,
  83 F.3d 1136 (9th Cir. 1996)......................................................... 14

*F.C.C. v. Fox Television Stations, Inc.*,
  132 S. Ct. 2307 (2012) ................................................................ 13

*Hamdan v. Rumsfeld*,
  548 U.S. 557 (2006) ..................................................................... 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)

1
2

*Humphrey's Ex'r v. United States*,
    295 U.S. 602 (1935) ................................................................................ 9, 10

3
4

*Jones v. Cmty. Dev. Agency*,
    733 F.2d 646 (9th Cir. 1984) ...................................................................... 14

5
6

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ........................................................................ 7

7
8

*Morrison v. Olsen*,
    487 U.S. 654 (1988) ............................................................................ 10, 12

9

*Myers v. United States*,
    272 U.S. 52 (1926) ........................................................................................ 8

10
11

*Pena v. Gardner*,
    976 F.2d 469 (9th Cir. 1992) ...................................................................... 14

12
13

*Ralpho v. Bell*,
    569 F. 2d 607 (D.C. Cir. 1977) ..................................................................... 7

14
15

*Swartz v. KPMG*,
    476 F.3d 756 (9th Cir. 2007) ...................................................................... 15

16
17

*U.S. Dep't of Navy v. Fed. Labor Relations Auth.*,
    665 F.3d 1339 (D.C. Cir. 2012) ................................................................... 11

18
19

*Whitman v. Am. Trucking Ass'mns*,
    531 U.S. 457-475 (2001) .............................................................................. 7

20

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001) ................................................................................... 12

21

**STATUTES**

22
23

12 U.S.C. § 5481(15)(A)(i) ......................................................................... 17

24

12 U.S.C. § 5491(a) ...................................................................................... 2

25

12 U.S.C. § 5491(b)(2), (c)(2)-(3) ................................................................ 3

26

12 U.S.C. § 5491(c)(1) ............................................................................ 3, 10

27

12 U.S.C. § 5491(c)(3) .................................................................................. 8

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

iii

12 U.S.C. § 5492(b) ............................................................................................9

12 U.S.C. § 5492(c) ............................................................................................9

12 U.S.C. § 5497(a)(1) ........................................................................................3

12 U.S.C. § 5497(a)(2)(iii) ..................................................................................3

12 U.S.C. § 5497(a)(2)(A) .................................................................................11

12 U.S.C. § 5497(a)(2)(c) ..............................................................................3, 11

12 U.S.C. §§ 5511 et seq. ...................................................................................2

12 U.S.C. §§ 5531 ..............................................................................................4

12 U.S.C. §5536 ...............................................................................................14

12 U.S.C. § 5536(a)(3) ....................................................................................4, 6

12 U.S.C. § 5581(a)(2)(A) ..................................................................................3

CFPA ......................................................................................................4, 6, 13

Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5536(a)(3),
    5564, 5565 ...................................................................................................4

Dodd-Frank Act, Title X, §§ 1021 et seq. ........................................................2

Exchange Act. ...................................................................................................15

Federal Trade Commission Act ..........................................................................9

Sarbanes-Oxley Act of 2002 ..............................................................................8

**OTHER AUTHORITIES**

*Creating a Consumer Financial Protection Agency: A Cornerstone of
    America's New Economic Foundation: Hearing Before the S.
    Comm. on Banking, Housing, and Urban Affairs*, 111th Cong. 75
    (2009) (statement of Edward L. Yingling, President and Chief
    Executive Officer, American Bankers Association ("Yingling
    Statement")) ...............................................................................................11

Rule 8 of the Federal Rules of Civil Procedure ......................................1, 14, 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

iv

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)

Rule 9(b) of the Federal Rules of Civil Procedure .......................................... 1, 14, 15

Rule 12(b)(6) of the Federal Rules of Civil Procedure ............................................ 14

H.R. 4173 ................................................................................................................. 10

H.R. 4173, 111th Cong. § 4103 (2009) .................................................................... 10

*Perspectives on the Consumer Fin. Prot. Agency*: *Hearing Before the H. Comm. on Fin. Serv.*, 111th Cong. 55 (2009) (statement of Michael S. Menzies, Sr., President and Chief Executive Officer, Easton Bank and Trust Co., on behalf of the Independent Community Bankers of America) .......................................................... 1

U.S. Const. art. I, § 7, cl. 1 ...................................................................................... 11

U.S. Const. art. II, § 3 ................................................................................................ 8

U.S. Const. art. III. §1 ............................................................................................ 6, 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

v

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)

**MEMORANDUM OR POINTS AND AUTHORITIES**

Defendant Dmitry Fomichev ("Fomichev"), through his undersigned counsel, respectfully submits this memorandum of points and authorities in support of Mr. Fomichev's motion to dismiss the Amended Complaint filed by the Consumer Financial Protection Bureau ("CFPB"), dated June 30, 2016, as unconstitutional in violation of the separation of powers.  Additionally, Mr. Fomichev submits that the Amended Complaint fails to meet the pleading standards of Rules 8, 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and on that basis should be dismissed as well.

## I.   PRELIMINARY STATEMENT

The unprecedented structure of the CFPB circumvents accountability established under the Constitution and confers all legislative, executive and judicial powers on the Director in direct violation of the separation of powers.  Leaders within the industry acknowledge the unprecedented concentrated power of the CFPB, describing it as having "an autonomous director while establishing an advisory board with essentially no authority."  *See Perspectives on the Consumer Fin. Prot. Agency*: *Hearing Before the H. Comm. on Fin. Serv.*, 111th Cong. 55 (2009) (statement of Michael S. Menzies, Sr., President and Chief Executive Officer , Easton Bank and Trust Co., on behalf of the Independent Community Bankers of America).  The constitutional challenge to the CFPB is not isolated to congressional hearings, though.  Arguments that the CFPB structure violates the checks and balances of the Constitution are being heard in jurisdictions throughout the country, with the most notable case before the Court of Appeals of the District of Columbia.[1]  When the CFPB structure is analyzed holistically in its entirety, the court should find that the CFPB is unconstitutional, and that its actions, including

---

[1] *See PHH Corp., et al. v. Consumer Fin. Prot. Bureau*, case number 15-1177, before the U.S. Circuit Court of Appeals for the District of Columbia.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

1

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)

1    the one against Mr. Fomichev, are void, requiring dismissal with prejudice of the

2    Amended Complaint.

3          In the alternative, the Amended Complaint should be dismissed because it

4    fails the most basic pleading standards by reciting threadbare assertions of unlawful

5    conduct against Mr. Fomichev supported by mere conclusory statements.  First, the

6    CFPB attempts to create new law and obligations under the regulations through this

7    lawsuit and in violation of Mr. Fomichev's due process rights.  There is no case law

8    or statutory provision that put Mr. Fomichev on notice of the duty to monitor or vet

9    third parties as the CFPB alleges.  Nor was Mr. Fomichev provided any notice as to

10   what actions constitute "substantial assistance" such that he would be liable under

11   the CFPB regulations.  The CFPB's Amended Complaint relies on inferences and

12   guilt by association, but these types of pleadings are insufficient to pass the

13   standards outlined by the Federal Rules of Civil Procedure, *Twombly* and its

14   progeny.  The Amended Complaint completely fails to allege any cognizable injury

15   attributable to Mr. Fomichev, as a former employee of D & D Marketing, Inc., d/b/a

16   T3 Leads ("T3"), since all alleged injuries are "likely."   In addition to the

17   arguments made below, Mr. Fomichev incorporates by reference the arguments

18   anticipated to be presented in the Motion to Dismiss by co-defendants T3 Leads,

19   Grigor Demirchyan and Marina Demirchyan.

20   **II.    FACTUAL BACKGROUND**

21       **A.    <u>Dodd-Frank and the CFPB</u>**

22          On July 21, 2010, a sweeping overhaul of the financial regulatory

23   system was enacted in the Dodd-Frank Act, Title X, §§ 1021 et seq., codified at 12

24   U.S.C. §§ 5511 et seq.  The statute created a new super agency, the CFPB,

25   unmoored from historical precedent and insulated from political accountability.  Title

26   X creates the CFPB as a new "Executive agency" that is an "independent bureau" . . .

27   "established in the Federal Reserve System."  12 U.S.C. § 5491(a).  The statute

28   places sweeping legislative, executive, and judicial power all in the same hands of a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA
DB3/ 201033656.3

2

single person – the CFPB Director – who is entirely unaccountable to the democratic process, is not subject to meaningful executive or legislative oversight, and is not subject to any internal checks on the Director's authority.

First, the statute prevents meaningful executive oversight of the CFPB. The Director receives a five-year term in office and does not serve at the pleasure of the President but instead may only be removed by the President for "inefficiency, neglect of duty, or malfeasance in office." 12 U.S.C. § 5491(b)(2), (c)(2)-(3).

Second, the Director is not subject to meaningful congressional oversight. In fact, Congress eliminated important checks on the Director by abdicating its own core responsibilities over the CFPB. For example, the Director has the sole power to fund the CFPB from the Federal Reserve System's operating expenses. 12 U.S.C. § 5497(a)(1). Moreover, Congress is prohibited from reviewing the Director's budget determination. 12 U.S.C. § 5497(a)(2)(c) ("'The funds derived from the Federal Reserve System pursuant to this subsection *shall not be subject to review* by the Committees on Appropriations of the House of Representatives and the Senate") (emphasis added). In fact, the CFPB is authorized to generously fund itself by unilaterally demanding up to twelve percent of the Federal Reserve System's funds, 12 U.S.C. § 5497(a)(2)(iii), or $605.9 million in 2016.[2] This demand is exempt from congressional review or accountability.

Third, the Director is not checked by the deliberative decision-making process of a multimember commission structure, nor is he checked by a short tenure, as he serves a fixed five-year term. 12 U.S.C. § 5491(c)(1). Title X transferred to the CFPB authority from seven different agencies, *see* 12 U.S.C. § 5581(a)(2)(A) (including the Federal Deposit Insurance Corporation, the Federal Trade Commission, the National Credit Union Administration, the Office of the

---

[2] *See* CFPB strategic plan, budget, and performance plan and report at p. 9, available at http://files.consumerfinance.gov/f/201602_cfpb_report_strategic-plan-budget-and-performance-plan_FY2016.pdf.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

3

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)

1    Comptroller of the Currency, the Office of Thrift Supervision, and the Department
2    of Housing and Urban Development), and empowers it to take several actions,
3    including enforcement actions against persons engaged in prohibited conduct.  12
4    U.S.C. §§ 5531.
5         As a result of this historically unprecedented statutory scheme, the CFPB has
6    virtually unchecked authority over effectively every consumer financial transaction
7    and every business that engages in such transactions.

8         **B.    <u>Claims Against Mr. Fomichev</u>**

9         The CFPB sued Mr. Fomichev for alleged violations of the Consumer
10   Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5536(a)(3), 5564, 5565.
11   Am. Compl. Intro, ¶¶ 56-57, 68-69.  The CFPB alleges that Mr. Fomichev co-
12   founded T3, a lead aggregator that sells consumer-loan applications as "leads" to
13   small-dollar lenders and other purchasers.  Am. Compl. ¶¶ 6-7.  CFPB alleges that
14   T3: (1) failed to vet or monitor its lead generators and lead purchasers, exposing
15   consumers to the risk of having their information purchased by actors who would
16   use it for illegal purposes; (2) allowed its lead generators to attract consumers with
17   misleading statements; and (3) took unreasonable advantage of consumers' lack of
18   understanding of the material risks, costs, or conditions of the loan products for
19   which they apply.  Am. Compl., Intro.  The Amended Complaint does not allege
20   that T3 was a lender or that consumers purchased loan products from T3 or Mr.
21   Fomichev.  A vast majority of these allegations relate to T3 and do not provide any
22   information or allegations relating to Mr. Fomichev.

23        CFPB generally recites the regulation as it relates to Mr. Fomichev –e.g.,
24   "knowingly or recklessly provided substantial assistance to T3" in violation of the
25   CFPA, 12 U.S.C. § 5536(a)(3). Am. Compl. ¶¶ 57, 69.  The *only* statements relating
26   to Mr. Fomichev are as follows:

27        • " Fomichev is a co-founder and was the Chief Executive Officer and
28          Chief Technical Officer of T3 from the company's founding in 2005

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

4

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)

through July 2014. Fomichev had managerial responsibility for T3 and materially participated in the conduct of its affairs. Fomichev resides in this District and, in connection with the matters alleged, transacted business here."  Am. Compl. ¶ 5.

- "Fomichev co-founded T3 in 2005 and claims to own 50% of the company."  Am. Compl. ¶ 7.

- "Fomichev served as Chief Executive Officer and Chief Technical Officer of T3, and he was responsible for designing the proprietary software and systems used to transact T3's business."  Am. Compl. ¶ 8.

- "From the founding of T3 through at least July 2014, Fomichev had authority and responsibility to decide whether to accept any lead generator or purchaser into or remove them from T3's network."  Am. Compl. ¶ 17.

- "From the founding of T3 through at least July 2014, Fomichev shared responsibility for deciding the position of each purchaser in the ping tree and designing T3's systems to filter and sell applications in the manner most profitable to T3, without regard for the practices of lead generators or purchasers."  Am. Compl. ¶ 19.

- "Fomichev had significant responsibility for establishing T3's policies and practices, and, throughout his employment at T3, he had substantial control over T3 operations."  Am. Compl. ¶¶ 9, 56, 68, 69

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

5

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)

- "Fomichev knowingly or recklessly provided substantial assistance to T3, a service provider engaged in unfair acts and practices, in violation of the CFPA, 12 U.S.C. § 5536(a)(3)." Am. Compl. Intro., ¶ 57.

These generalized allegations of wrongdoing are not supported by any factual allegations against Mr. Fomichev – there are simply *no* allegations saying what Mr. Fomichev actually did, when he did it, with whom he did it, where he did it, or how he did it, let alone that such actions were illegal when he allegedly did them.

The Amended Complaint does not contain specific allegations with respect to Mr. Fomichev's knowledge or actions relating to the allegedly "misleading or inaccurate statements" by lead generators, or "misleading or inaccurate statements that are likely to mislead consumers," or his "reason to believe that the applications [T3] sells are likely to result in loans with interest rates that exceed state usury limits." *See, e.g.*, Am. Compl. ¶¶ 21, 23, 29.

## III. THE CFPB VIOLATES THE CONSTITUTIONAL SEPARATION OF POWERS.

The fundamental problem with the CFPB structure is that all legislative, executive, and judicial power rests in the same hands of one single person – the Director.  The Director is not answerable to the President or to the budgeting powers of Congress, which insulates him and the agency from democratic accountability.  When taken together with the CFPB's unprecedented scope of power, this insulation from accountability presents an unprecedented and unconstitutional violation of the separation of powers.

### A. <u>An Agency's Power Must Be Subject to Checks and Balances</u>

The Constitution vests the principal power of judicial review exclusively in the courts. U.S. Const. art. III. §1. ("[t]he judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish."). This power extends to review of the constitutionality of an agency's structure as "[i]t is emphatically the province and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

6

MOTION TO DISMISS 2:16-CV-2724-PSG (EX)

1   duty of the Judicial Department to say what the law is." *Marbury v. Madison,* 5

2   U.S. (1 Cranch) 137, 177 (1803).  For "[i]f the courts are disabled from requiring

3   administrative officials to act constitutionally, it is difficult to see who would

4   perform this function." *Ralpho v. Bell*, 569 F. 2d 607, 620 (D.C. Cir. 1977); s*ee*

5   *also Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 857

6   (1986)(holding "due regard must be given in each case to the unique aspects of the

7   congressional plan at issue and its practical consequences in light of the larger

8   concerns that underlie Article III").

9   **B.   Judicial Review of Agencies Must Be Done Holistically**

10           When analyzing the constitutionality of an agency's structure, courts should

11   review an agency's entire structure because "two structural features" that raise "no

12   constitutional concerns independently" may still present constitutional concerns if

13   Congress has combined them "in a single statute." *Ass'n of Am. R.Rs. v. U.S. Dep't*

14   *of Transp.*, 721 F.3d 666, 673 (D.C. Cir. 2013) *vacated on other grounds*, 135 S.

15   Ct. 1225 (2015).  Congress's power to create federal agencies is not derived directly

16   from the Constitution, so, in order to guide this analysis, the Supreme Court

17   analyzes whether an agency's structure provides "protections against abuse of

18   power," and whether there is "an accumulation of all powers legislative, executive,

19   and judicial in the same hands," or what James Madison called "the very definition

20   of tyranny." *Hamdan v. Rumsfeld*, 548 U.S. 557, 602 (2006) (quoting *The*

21   *Federalist No. 47*, at 324 (J. Cooke ed. 1961) (J. Madison)).  Here, an

22   unprecedented amount of unchecked power is placed into the hands of a single

23   director, giving the CFPB a novel structure that is practically incomparable to other

24   agencies.  The novelty of the CFPB should not be minimized.  Novelty may be an

25   indication of constitutional problems, and the court must perform an analysis that

26   examines, as a whole, the independence of the agency in comparison to the scope of

27   the power conferred by Congress.  *Whitman v. Am. Trucking Ass'mns*, 531 U.S.

28   457-475 (2001).  The lack of a historical precedent to justify the CFPB's immense

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA
DB3/ 201033656.3

7

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)

---

and concentrated power along with the alarming absence of structural safeguards signals its unconstitutionality.

## C.     The Director Has No Presidential Oversight

The Constitution vests the executive power in the President, who must "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.  As the Supreme Court recognized, "[A] key 'constitutional means' vested in the President—perhaps *the* key means—was 'the power of appointing, overseeing and controlling those who execute the laws." *Free Enter. Fund*, 561 U.S. at 501 (quoting 1 Annals of Cong.).  The President "must have the power to remove [them] without delay." *Myers v. United States*, 272 U.S. 52, 134 (1926).  But the CFPB Director is not accountable to the President and can only be removed for cause. *See* 12 U.S.C. § 5491(c)(3) ("The President may remove the Director for inefficiency, neglect of duty, or malfeasance in office.").

In *Free Enterprise Fund*, the Court held the structure of the Public Company Accounting Oversight Board ("Board"), which was created as part of the Sarbanes-Oxley Act of 2002, was unconstitutional. *Free Enter. Fund*, 561 U.S. at 514.  The court examined the way in which the Board was overseen and how the structure limited the President's ability to remove the Board members. *Id.* at 502-505. Under the regulation, the Securities Exchange Commission ("SEC Commission") oversaw the Board and had the power to decide whether a Board member's conduct qualified as "good cause" and thereby warranted removal. *Id.* at 479.  Since the SEC Commission could not remove a Board member at will, the court held, the President could not hold the SEC Commission fully accountable for its responsibilities. *Id* at 496.  The court found that the unconstitutional structure created a "multi-level protection from removal" that was contrary to Article II's vesting of executive power in the President. *Id.* at 484.

Much like the layers and impermissible restrictions found in the *Free Enterprise Fund* structure, the overall scheme of Title X undermines the President's

8

ability to exert executive oversight over the CFPB.  The CFPB structure degrades, and to some extent eradicates entirely, the President's authority to appoint and remove an executive officer from an otherwise insulated agency.  For example, the CFPB's Director can simply delegate all of his extensive power to anyone he chooses: "The Director of the Bureau may delegate to any duly authorized employee, representative, or agent any power vested in the Bureau by law."  12 U.S.C. § 5492(b).  Further empowering the Director, there is virtually no oversight by the Board of Governors.  12 U.S.C. § 5492(c).  The Board of Governors may **not** intervene in any proceeding or enforcement action, may **not** appoint, direct or remove an officer or employee of the CFPB, and may **not** it consolidate any functions or responsibilities of the CFPB.  *Id.*  Effectively, the Board of Governors is prohibited from governing.   The Director's power to delegate, along with the fact that the President can only remove the Director "for cause," creates an opportunity for impermissible dual layers of for-cause tenure as seen in *Free Enterprise Fund*.  561 U.S. at 506.  *See also Buckley v. Valeo*, 424 U.S. 1, 136 (1976) (confirming the presidential power to make appointments to federal agencies and invalidating Congress's attempt to appoint members of the Federal Election Committee).

Any restrictions on the President's removal power are presumptively unconstitutional, and the Supreme Court has only permitted restrictions in limited cases.  *See Humphrey's Ex'r v. United States*, 295 U.S. 602, 624 (1935) (holding that the restriction on the President's removal power of members of an impartial multi-member commission in the Federal Trade Commission Act was constitutionally valid).  The Supreme Court in *Humphrey's* examined the President's ability to remove the Federal Trade Commissioner.  It found that there was a permissible restriction on the President's removal power; however, that restriction was balanced by an underlying policy that Congress wanted the Federal Trade Commission ("FTC") and its Commissioner to be "free from political

1  domination or control." *Humphrey's Ex'r*, 295 U.S. at 625.  Safeguards within the
2  structure of the FTC, including the nonpartisan membership of the commission,
3  weighed in favor of permitting a restriction on the President's power to remove the
4  Commissioner.  *Id*. at 631.  As discussed below, the safeguards present in the FTC
5  are not present in the CFPB structure, and a restriction on the President's ability to
6  remove the Director should not be sanctioned and instead be found
7  unconstitutional.

8          D.      **Unlike Other Agencies, CFPB Decision-Making Power Is
9                  Concentrated In One Sole Director**

10         Unlike other financial regulatory agencies, the Director is unchecked by the
11  structure of a multi-member commission. 12 U.S.C. § 5491(c)(1). The Director is
12  appointed to a five-year tenure, during which he wields broad authority under
13  eighteen statutes that were previously enforced by seven different agencies.  It is
14  unprecedented for a single individual to hold such a concentration of powers while
15  being simultaneously shielded from democratic accountability. And unlike the
16  FTC, the Director is not called upon to remain "non-partisan," or to "act with
17  impartiality," or to "exercise the trained judgment of a body of experts 'appointed
18  by law and informed by experience.'" *See Humphrey's Ex'r*, 295 U.S. at 624
19  (citation omitted).  The Director is not required to build consensus from among
20  differing viewpoints through the structure of a multi-member commission.[3]  Nor
21  does the Director have merely a "limited jurisdiction and tenure." *See Morrison v.*
22  *Olsen*, 487 U.S. 654, 691 (1988).  Instead, the Director enjoys a lengthy tenure and
23
24  _____
25  [3] H.R. 4173 was the original bill, first introduced in the House of Representatives,
    which called for the creation of the CFPB. The CFPB was to be structured as a
26  commission and composed of seven members who were appointed by the President,
    with the advice and consent of the Senate. H.R. 4173, 111th Cong. § 4103 (2009).
27  However, once the bill made its way out of the Senate, the CFPB was changed into
28  an agency, headed by a single director.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

10

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)

1  unprecedented power and is unconstitutionally insulated from democratic

2  accountability.

3      **E.      The CFPB Has No Congressional Oversight Through Its Budget**

4          Congress abdicated its most fundamental oversight of the CFPB when it

5  exempted the Director's budget from "review by the Committees on Appropriations

6  of the House of Representatives and the Senate." 12 U.S.C. §5497(a)(2)(C).

7  Instead, the Director has the sole authority to set the CFPB's budget and to demand

8  up to twelve percent of the Federal Reserve System's operating expenses—or more

9  than half a billion dollars. *See* 12 U.S.C. § 5497(a)(2)(A).  This unfettered access to

10  the budget is patently unconstitutional.  Under the Constitution, Congress has

11  exclusive control over the power of the budget. *See* U.S. Const. art. I, § 7, cl. 1

12  (Origination Clause); *Id.* §8, cl. 1 (Taxing and Spending Clause); *Id.* § 9, cl. 7

13  (Appropriations Clause).  And this power "may, in fact, be regarded as the most

14  complete effectual weapon with which any constitution can arm the immediate

15  representatives of the people." *U.S. Dep't of Navy v. Fed. Labor Relations Auth.*,

16  665 F.3d 1339, 1347 (D.C. Cir. 2012) (quoting *The Federalist No.58*, at 359 (J.

17  Madison) (internal quotation marks omitted)).  But the CFPB allows for "an

18  unprecedented delegation of legislative authority to the agency," while

19  simultaneously shielding the Director from any congressional accountability.

20  *Creating a Consumer Financial Protection Agency: A Cornerstone of America's*

21  *New Economic Foundation: Hearing Before the S. Comm. on Banking, Housing,*

22  *and Urban Affairs*, 111th Cong. 75 (2009) (statement of Edward L. Yingling,

23  President and Chief Executive Officer, American Bankers Association ("Yingling

24  Statement")).

25          The power to control such a large budget is only amplified by a lack of

26  accountability to the President, since there is no safeguard that can serve as a check

27  on the Director as he puts that financial power to work through enforcement and

28  policy actions.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

11

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)

**F.     The Court Should Not Evaluate the CFPB's Structural Features in Isolation**

An analysis that focuses on each troubling aspect of the CFPB's structure in isolation is inadequate because the cumulative impact of the CFPB's concentration of legislative, executive, and judicial powers in addition to its insulation from constitutional checks and balances demonstrates its unconstitutionality. *See, e.g.*, *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 475 (2001); *see also Morrison*, 487 U.S. at 671-73, 695-97 (holding "the degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred"). Rather, a holistic analysis reveals that the CFPB "appears to be the most powerful agency ever created" that is also virtually immune to meaningful executive or congressional oversight. *See* Yingling Statement;; *see also* Opening and Reply Briefs for Petitioners in *PHH Corp., et al. v. Consumer Financial Protection Bureau*, case number 15-1177, before the U.S. Court of Appeals for the District of Columbia Circuit.

To the extent that the CFPB relies at all on the reasoning of district court decision in *CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1089 (C.D. Cal. 2014), such reliance is misplaced. That case did not take a holistic approach to analyzing the constitutionality of the CFPB's structure. Instead, the district court addressed each argument piecemeal, first rejecting arguments that the CFPB structure interferes with the President's executive power and then sequentially rejecting arguments challenging the CFPB's impingement of the Appropriations Clause and the CFPB's intrusion on both legislative and judicial powers. *Id.* at 1089-92. What the district court failed to do, however, was consider as it must the cumulative, holistic effect of the CFPB's violation of the separation of executive, legislative and judicial powers for such an unprecedented concentration of power within one agency. Taken together, Mr. Fomichev submits that a holistic review of the arguments put forth in this Motion, and those argued by the petitioners in the

1   *PHH Corporation* litigation, demonstrate the unconstitutionality of the CFPB's

2   structure.

3         As the court in *Association of American Railroads* noted, merely

4   synthesizing otherwise approved elements "would be no proof of constitutionality."

5   *Ass'n of Am. R.Rs.*, 721 F.3d at 673.  When taken into full consideration, the Court

6   should find that the limited removal power the President holds over the Director,

7   coupled with the fact that there is no congressional oversight and no governing

8   multi-member committee, is insufficient to "counteract ambition" and allow those

9   two branches of government the necessary constitutional means "to resist

10  encroachments."  *Free Enter. Fund*, 561 U.S. at 501 (citing 1 Annals of Cong.).

11  The CFPB's structure circumvents nearly all accountability established under the

12  Constitution, and thus it is unconstitutional.

13  **IV.**  **MR. FOMICHEV DID NOT HAVE FAIR NOTICE THAT THE**

14        **ALLEGED ACTIONS COULD BE VIOLATIONS OF THE CFPA**

15        The Amended Complaint bases its causes of action on a failure by T3 to "vet

16  and monitor" conduct by third parties, yet no case law or regulation requires such

17  an affirmative duty.  Fundamental principles of due process require "laws which

18  regulate persons or entities must give fair notice of conduct that is forbidden or

19  required."  *F.C.C. v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012).

20  Without fair notice of any obligations, the CFPB cannot seek an enforcement action

21  for alleged violations of those "obligations."  Similarly, Mr. Fomichev could not

22  reasonably have anticipated that T3's failure to monitor third parties could be

23  deemed "unfair."  **This action brought by the CFPB is an attempt to create the**

24  **law for which it is simultaneously trying to enforce against Mr. Fomichev**.  Due

25  process dictates such an action is impermissible.

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

13

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)

## V.    THE AMENDED COMPLAINT FAILS TO MEET THE PLEADING STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, in order for a claim to be properly stated, it must contain a short and plain statement showing that the pleader is entitled to relief.  Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is proper where a complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See*, *e.g.*, *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Importantly, factual allegations must rise above "the speculative level."  *Twombly*, 550 U.S. at 545.  Courts are not to accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 663; *Jones v. Cmty. Dev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (stating "conclusory allegations of law and unwarranted inference are insufficient to defeat a motion to dismiss for failure to state a claim."). A claim is plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The CFPB's Amended Complaint is also subject to a heightened pleading standard under Rule 9(b) because the claims against Mr. Fomichev stem from "false and misleading" statements that are likely to cause substantial injury to consumers. A heightened pleading standard is appropriate under 12 U.S.C. §5536 because Rule 9(b) applies "to any allegations of fraudulent conduct, even when none of the claims in the complaint 'sound in fraud.'"  *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1089–1090 (C.D. Cal. 2009) (citing *Vess v. Ciba–Geigy Corp.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

14

MOTION TO DISMISS 2:16-CV-2724-PSG (EX)

*USA*, 317 F. 3d 1097, 1102–06 (9th Cir. 2003)).  Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake" while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b).  Rule 9(b) does not allow a complaint to merely group multiple defendants together but rather the plaintiff must differentiate their allegations and inform each defendant separately of his alleged participation in the fraud.  *Swartz v. KPMG*, 476 F.3d 756, 764-65 (9th Cir. 2007).

### A.     The CFPB Relies on Inferences and Bald Assertions Rather Than Alleging Specific Acts or Knowledge

A careful review of the CFPB's Amended Complaint reveals that it fails to meet pleading standards under Rule 8 and Rule 9 because it offers nothing more than baseless allegations and unwarranted inferences. The Amended Complaint is void of any specific actions Mr. Fomichev took or knowledge he possessed that relate to the alleged "substantial assistance" the CFPB accuses him of providing T3. Mr. Fomichev's position within T3 is insufficient to find liability or that he provided "substantial assistance."  *Durham v. Kelly*, 810 F.2d 1500, 1505 (9th Cir. 1987) ("There is no evidence in the record that [the alleged aider and abettor] provided substantial assistance or that she had actual knowledge of the alleged illegal activities of the chief executive officer of the corporation. It would be absurd to hold her responsible as an aider and abetter without proof of scienter merely because she was a director of a corporation [that] may have been guilty of violations of the Exchange Act.").

The only allegations pertaining to Mr. Fomichev's individual conduct are made through the bare assertions that he "has managerial responsibility for T3," "was responsible for designing proprietary software," had "significant responsibility for establishing T3's policies and practices" and "had substantial control over T3 operations." *See e.g.*, Am. Compl. ¶¶ 8, 56.  The claims that Mr. Fomichev held a position (Chief Technical Officer) or had certain responsibilities

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

15

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)

1  are not sufficient for alleging acts or conduct committed by Mr. Fomichev that
2  could demonstrate his liability.  The assertions against Mr. Fomichev are just that –
3  bare assertions alleging no actual conduct or acts.

4      For instance, the Amended Complaint does not allege that Mr. Fomichev
5  knew or had reason to believe that lead generator websites contained misleading
6  statements.  At most, the Amended Complaint alleges: "Mr. Fomichev shared
7  responsibility for deciding the position of each purchaser in the ping tree and
8  designing T3's system to filter and sell applications . . . without regard for the
9  practices of lead generators or purchasers."  Am. Compl. ¶ 19.  Much like the bald
10  allegation that "[f]rom the founding of T3 through at least July 2014, Fomichev had
11  authority and responsibility to decide whether to accept any lead generator or
12  purchaser into or remove them from T3's network," the CFPB never alleges that
13  Mr. Fomichev exercised that authority, let alone that he exercised his authority in
14  an illegal manner.

15      Additionally, the Amended Complaint dedicates significant space to
16  allegations related to T3's acceptance of applications from lead generators that have
17  websites with allegedly misleading statements, yet nowhere does the Amended
18  Complaint allege that Mr. Fomichev has ever read such an application, visited the
19  websites that allegedly contain inaccurate statements, or otherwise acted or
20  possessed any knowledge that would cause him to be personally liable for
21  wrongdoing.  The Amended Complaint never alleges exactly what Mr. Fomichev
22  did as part of his "substantial control and involvement" in T3's "policies and
23  practices" that caused any injury.  Instead, the Amended Complaint makes the
24  baseless assertion that Mr. Fomichev exercised substantial control over and
25  involvement in allegedly illegal practices and then urges the court to consider future
26  injury while alleging no past injury.

27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

16

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)

1

**B.    The CFPB Failed To Allege Any Injury Attributed to Mr. Fomichev**

2

3    The CFPB is not entitled to any relief against Mr. Fomichev because it fails

4    to allege any conduct to which injury is attributed.  The Amended Complaint

5    alleges that Mr. Fomichev is a former employee of T3, yet all injuries are future and

6    potential.  *See e.g.*, Am. Compl. ¶ 53 ("T3's conduct is *likely* to cause substantial

7    injury to consumers.") (emphasis added).[4]  Ultimately, the allegations in the

8    Amended Complaint do not provide a reasonable basis for the court to conclude

9    that any act or practice by Mr. Fomichev "cause[d] or is likely to cause substantial

10    injury to consumers which is not reasonably avoidable by consumers," and that

11    "such substantial injury is not outweighed by countervailing benefits to consumers

12    or to competition."  12 U.S.C. § 5481(15)(A)(i).  Instead, the Amended Complaint

13    presents bare assertions concerning Mr. Fomichev's position and responsibilities

14    and asks the court to accept unwarranted inferences about his liability. Such bare

15    assertions do not meet the federal pleading standards and thus require dismissal.

16                                    **CONCLUSION**

17    Viewed holistically, the unprecedented structure and function of the CFPB

18    create an unconstitutional violation of the separation of powers, voiding any action

19    taken by the CFPB including bringing this Amended Complaint against Mr.

20    Fomichev.  Thus, Mr. Fomichev respectfully requests that the Court dismiss with

21    prejudice the Amended Complaint on this basis.

22

23

24

25

26

---

27    [4] To the extent is the CFPB's claims are based on any conduct by Mr. Fomichev
28    before 2014, the claims must be dismissed because the CFPB has not identified any
actions to support its claims before 2014.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

17

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)

1          Alternatively, Mr. Fomichev respectfully requests that the Court dismiss the

2  Amended Complaint based on its repeated violations of the federal pleading

3  standards.

4

5  Dated:       July 29, 2016          MORGAN, LEWIS & BOCKIUS LLP

6

7                             By * /s/ Nathan J. Hochman*

8                                Nathan J. Hochman
                                Attorneys for Defendant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB3/ 201033656.3

18

MOTION TO DISMISS 2:16-CV-2724-PSG
(EX)